OWEN DALEY, Respondent, v. THOMAS BROWN et al.,
                    Appellants.

1. APPEAL — QUESTION NOT RAISED BELOW — NEGLIGENCE OF MASTER
IN FAILING TO NOTIFY FOREMAN OF RULE.  Where, upon the trial of an
action to recover damages for personal injuries, caused by the alleged
negligent shifting of a derrick engine which had become misplaced,
brought by a laborer employed in excavating, who had been directed by
the foreman to leave his usual work and assist in its replacement and
while so doing was injured, the court decides to ask for a special verdict
and requests defendants' counsel to suggest any questions they deem
important; and they suggest some having regard to substance rather than
form and assent to others having regard to form only, but at no time,
either during the trial, or on a motion for a nonsuit or for the direction of
a verdict, do they raise the question whether a rule requiring the lower-
ing of a boom before the shifting of the engine had been communicated
by the defendants to the foreman in charge of the general work of exca-
vation, who, as the jury found, had authority and whose duty it was to
superintend and direct the shifting of the engine, but on the contrary
insist that the shifting was the duty of the engineer; that he was the
proper person to whom the rule, if necessary, should have been and was
communicated; and all concerned in the trial, although there was neither
evidence nor finding to that effect, took it for granted that it had not been
communicated to the foreman, they cannot claim for the first time on
appeal that affirmative proof of its non-communication to the foreman was
necessary in order to sustain a recovery.

2. EVIDENCE SUFFICIENT TO JUSTIFY FINDING THAT FOREMAN HAD
CHARGE OF ENTIRE WORK, TO WHOM RULE SHOULD HAVE BEEN COMMU-
NICATED.  A finding that the foreman had authority and it was his duty
to superintend and direct the work of shifting the engine so that the rule
should have been communicated to him is warranted by evidence that he
had general charge and superintendence of the work of excavating and
hired the laborers, who were supposed to obey his instructions; that
although he did not hire him he gave the engineer instructions most of
the time; that the latter simply ran the engine upon signal of the foreman
or one of his men; that he never applied the power without the signal,
and that none of the men engaged in the shifting of the engine were under
his orders and he gave them no directions whatever, but all were under
the direction of the foreman.

Daley v. Brown, 45 App. Div. 428, affirmed.

(Argued May 9, 1901; decided June 4, 1901.)

APPEAL from a judgment of the Appellate Division of the
Supreme Court in the fourth judicial department, entered

December 8, 1899, affirming a judgment in favor of plaintiff entered upon a special verdict and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Tracy C. Becker* for appellants. The admission of evidence that rules or regulations should have been made and promulgated by the defendants, requiring that the boom of the derrick should be lowered when the braces were removed, or the engine was shifted, and the direction of a verdict in favor of the plaintiff based upon the findings of the jury that such a rule should have been made and communicated to the foreman of the excavating gang was error. (*Kudik* v. *L. V. R. R. Co.*, 78 Hun, 492; *Berrigan* v. *N. Y., L. E. & W. R. R. Co.*, 131 N. Y. 584; *Morgan* v. *H. R. O. & I. Co.*, 133 N. Y. 666; *Corcoran* v. *D., L. & W. R. R. Co.*, 126 N. Y. 673; *Flike* v. *B. & A. R. R. Co.*, 53 N. Y. 549; *Fuller* v. *Jewett*, 80 N. Y. 46; *Bushby* v. *N. Y., L. E. & W. R. R. Co.*, 107 N. Y. 374; *Durkin* v. *Sharp*, 88 N. Y. 225.) The burden of proof was on the plaintiff, not only to show that the nature of the work required that the defendants should make a rule that the boom should be lowered before moving or shifting the engine, and that due care and caution on the part of the defendants required that this rule should have been communicated to the foreman of the excavating gang, Finnegan, but also that such a rule was not, in fact, communicated to him. (*Rose* v. *B. & A. R. R. Co.*, 58 N. Y. 217; *Potter* v. *N. Y. C. & H. R. R. R. Co.*, 136 N. Y. 77; *Oleson* v. *C., etc., R. Co.*, 38 Minn. 412.)

*August Becker* for respondent. It was a question of fact for the jury to determine whether the defendants should have promulgated a rule requiring the boom to be lowered before moving or shifting the engine. (*Abel* v. *D. & H. C. Co.*, 103 N. Y. 581; *Ford* v. *L. S. & M. S. Ry. Co.*, 124 N. Y. 493; *Bushby* v. *N. Y., L. E. & W. R. R. Co.*, 107 N. Y. 374;

*Eastwood* v. *R. M. Co.*, 86 Hun, 91 ; *McGovern* v. *C. V. R. R. Co.*, 123 N. Y. 280 ; *Latorre* v. *C. S. Co.*, 9 App. Div. 145 ; *Tully* v. *N. Y. & T. S. Co.*, 10 App. Div. 463 ; *Felice* v. *N. Y. C. & H. R. R. R. Co.*, 14 App. Div. 345 ; *Murphy* v. *Hughes*, 1 Pennewill's [Del.] Rep. 250 ; *S. C. C. Co.* v. *McDonald*, 14 Col. 191.) The court properly left it for the jury to determine whether due care and caution on the part of the defendants for the protection of their employees required that the rule should have been communicated to the foreman in charge of the work. ( *Whittaker* v. *D. & H. C. Co.*, 126 N. Y. 544 ; *Hankins* v. *N. Y., L. E. & W. R. R. Co.*, 142 N. Y. 416 ; *Sprong* v. *B. & A. R. R. Co.*, 58 N. Y. 56 ; *Covey* v. *H. & St. J. R. Co.*, 27 Mo. App. 170 ; *Chicago, B. & Q. R. Co.* v. *Oyster*, 58 Neb. 1 ; *Fay* v. *M. & St. L. R. Co.*, 30 Minn. 231 ; *S. C. C. Co.* v. *McDonald*, 14 Col. 191 ; *Avilla* v. *Nash*, 117 Mass. 318 ; *I. & G. N. R. Co.* v. *Hinzie*, 82 Tex. 623 ; *L., N. A. & O. Co.* v. *Berkey*, 35 N. E. Rep. 3.) The fact was assumed and taken for granted upon the trial that the rule requiring the boom to be lowered before shifting the engine had not been communicated to the foreman. The defendants cannot question that fact upon this appeal. ( *Paige* v. *Fazackerly*, 36 Barb. 392 ; *Cooper* v. *Bean*, 5 Lans. 322 ; *Todd* v. *Nelson*, 109 N. Y. 324 ; *Hill* v. *Heermans*, 17 Hun, 473 ; *Wisser* v. *O'Brien*, 3 J. & S. 149 ; *Smith* v. *Hill*, 22 Barb. 656 ; *Jencks* v. *Smith*, 1 N. Y. 92 ; *Caponigri* v. *Altieri*, 165 N. Y. 263 ; *Drucker* v. *M. Ry. Co.*, 106 N. Y. 157 ; *Reeder* v. *Sayre*, 70 N. Y. 190.)

VANN, J. This action was brought to recover damages for personal injuries sustained by the plaintiff through the shifting of an engine of the defendants used to operate a derrick. The weight of the steel boom, 72 feet long, with two steel cables and a bucket attached, tended to pull the engine toward the derrick, but this was ordinarily prevented by braces which kept the engine in position. On the day of the accident one of the braces became displaced, the engine shifted a few inches to one side, and an attempt was made to restore it to its

proper position without lowering the boom. The suggestion of the engineer that the boom should be lowered was disregarded by the foreman. By direction of the foreman, who was authorized, as the jury found, to superintend and direct the work of replacing the engine, the other brace was removed when, owing to the absence of the braces and the strain caused by the weight of the boom, which stood at an angle of 45 degrees, the engine suddenly slipped on the frozen ground, caught the left leg of the plaintiff between the framework of the engine and one of the sills of the derrick and injured it so as to require amputation above the knee. The plaintiff was a common laborer, engaged in digging earth to fill the bucket. He was first employed the day before the accident, and by direction of the foreman had left his usual work and was standing between the engine and the derrick, where he was prying the engine back into place according to express orders.

A special verdict was found by the jury, who answered eighteen questions submitted to them by the court. They found, in substance, that the nature of the work required the defendants to make a rule that the boom should be lowered before the engine was moved or shifted, and that due care required them to communicate the rule to the foreman, who was authorized to superintend and direct the work of shifting; that they made such a rule and communicated it to the engineer, who had no authority to superintend the work of shifting, and who was not negligent in failing to give the required directions; that the foreman was negligent in superintending and directing or in failing to superintend and direct the manner of doing the work of shifting the engine, and that the danger from which the injury resulted was not open, obvious or known to the plaintiff, who was free from contributory negligence.

Other questions were answered, but they are not now material. There was neither finding nor evidence that the rule was not communicated to the foreman.

The difference of opinion that has arisen in this case clusters mainly around the following questions:

(1) Was it so assumed and treated on the trial by the court and the counsel on either side that the rule had not been communicated to the foreman as to preclude the appellant from raising the point for the first time upon appeal?

(2) Was the foreman in general charge of the entire work so that the rule should have been communicated to him?

The defendants were sworn and each testified that he instructed the engineer to lower the boom before moving or shifting the engine, but no one testified that any such instruction was given to the foreman, who, although in court, was not called as a witness. The natural inference was that the rule had been communicated to no one but the engineer. At the close of the evidence for the plaintiff the defendants did not mention the point in their motion for a nonsuit. At the close of all the evidence they asked for the direction of a verdict in their favor without mentioning the point, but on the other hand, expressly stating that "it now appears affirmatively in the case that, if a rule was necessary, the defendants made the rule, communicated it to the proper person and he acted upon it." A colloquy was then had between the court and the counsel upon either side in relation to the questions of fact to be submitted to the jury. The plaintiff contended that certain questions should be submitted, and, among others, whether rules were necessary. "Rules; I do not mean instructions to engineers, but rules governing all employees, Finnegan, the foreman, included." The defendants insisted that there was no question of fact in the case and when the court suggested a special verdict they objected, because there was no question of fact to be passed upon. Their counsel said to the court: "If you think within your own judgment there are things that are disputed, that you desire settled by the jury, it should be done. Of course Mr. Becker (defendants' counsel) and myself do not think there is anything here that needs settling. * * * I know by experience that your Honor is quite expert in framing propositions of law and fact. I shall not quarrel with the form of

49

them that you and my friend get up, but I do quarrel with the proposition that there is anything to go that way, and I desire to be placed on record as objecting to the submission of any questions of fact to the jury, in any form, and take my exception to the ruling which permits it." After the questions had been substantially prepared, the court asked one of the defendants' counsel if he had any special objection to any of them, and after some conversation back and forth the defendants' counsel asked " should not there be an additional question framed which the jury might answer * * * were the dangers known and obvious to the plaintiff ? " Another question was thereupon framed accordingly. The defendants' counsel criticized the form of still another question, stating that it might confuse the jury, whereupon the court suggested a change and asked, " would that help any ? " The defendants' counsel replied, " yes, I think that would help it under the conditions and circumstances surrounding the work." Further conversation occurred during which the court suggested another question still, to which the defendants' counsel replied, " that is right." Finally the defendants' counsel said : " We except to the submission of each ; object to the submission of each of the questions of fact in the form in which they are submitted." The court : " Well, you do not object to the form of the questions, do you ? I asked you to make any suggestions to change the form of the questions." Mr. Shire : " Oh, the form is all right." The court : " If you have any objections to the form of the questions, I should think they ought to be raised now." Mr. Tracy C. Becker : " Well, you may put it this way then : That we object to the submission of each of the questions and except to the submission of each."

The court charged the jury impartially and no exception was taken by either side. In submitting the 8th question, relating to the duty of the defendants to communicate the rule to the foreman, the court said : " It is claimed on the part of the defendants that the rule was to govern the engineer ; that the foreman had nothing to do with the operation of the

engine; that the lowering of the boom was an engineering act, which was left for the engineer to perform, and that it was sufficient for them to communicate this information, the propriety of the rule, and the fact that they had adopted such a rule, which they wanted lived up to, to the engineer, and that the failure to lower the boom was the failure on the part of the engineer; that they were not called upon to communicate it, in the exercise of this reasonable care and caution for the protection of their employees, to the foreman, for the reason that they had no reason to apprehend that the foreman would interfere with the engine, excepting under the supervision of the engineer. That is their claim. It is for you to say." The defendants' counsel then interrupted and asked leave to make the suggestion, " or after he had actually lowered the boom; * * * that the foreman should not interfere until after the engineer had actually lowered the boom." To this the court assented and instructed the jury accordingly.

After the charge the defendants' counsel made a suggestion, whereupon the court said: " Well, why not have that as an additional finding and let them say whether they considered it slipped or not?" Defendants' counsel: "Yes, but I don't want to be understood as asking them to find anything specially; I am excepting to any of these questions being submitted." The court: "I don't object to your excepting to any question that I submit, *but I do want you to submit any question in the case that you think is important.* Will this cover it? Would the accident have happened had the boom been lowered?" Defendants' counsel: " Well, without conceding the propriety of submitting the question or binding the defendants by it, so far as the form of it is concerned, it is satisfactory." The court: "That is what I mean. That will take the place of your request there and be more satisfactory, more intelligent."

After the jury had rendered their special verdict, the court asked if either side wished to be heard further before the direction of a general verdict, and both counsel answered no. Whereupon a general verdict for $4,000, the amount of dam-

ages assessed by the jury in favor of the plaintiff, was directed and found.

The jury had the right to render a general or special verdict in their discretion. (Code Civ. Pro. § 1187.) The court had the right to ask them to find specially on one or more questions of fact. (Id.) After the court had decided to ask for a special verdict, it was the duty of counsel to co-operate in submitting all the questions of fact, so that they could be finally settled and the law, as applied by the trial court, could be corrected on appeal, if necessary, without requiring a new trial. This is the object of a special verdict. Even if the counsel for defendants claimed there was no question of fact in the case, when the court had decided that there was, had asked them to suggest any question that they thought was important, and they suggested some, having regard to substance rather than form, and assented to others, having regard to form only, but at no time during the trial suggested the point now relied on, they waived it, for if they had raised it in season it might have been obviated. The point was either in their minds at the trial or it was not. If it was, their duty to the court, to the counsel on the other side and to fairness in practice, required them to mention it. If it was not, they cannot now complain because all alike overlooked the point. They not only failed to raise it, but by affirmative action treated it as not in the case. It was not made the basis of any claim on the trial. It was not alluded to on the motion for a nonsuit or to direct a verdict. Indeed, it was insisted by defendants' counsel that a rule, although not necessary, was in fact made and " communicated to the proper person," meaning the engineer. How can they now claim that it was communicated to the proper person, who, as it turns out, was not the engineer but the foreman? They even interrupted the trial judge during his charge (when he was stating their claim that it was sufficient to communicate the rule to the engineer and that it was unnecessary to communicate it to the foreman, because they had no reason to apprehend he would interfere with the engine) to suggest the addition, in

substance, that they had no reason to apprehend the fore-
man would interfere until after the engineer had actually
lowered the boom.   They had nothing to say when asked if
they wished to be heard before a general verdict was directed.
As all concerned in the trial took it for granted that the rule
had not been communicated to the foreman, the defendants
cannot claim for the first time on appeal that precisely the
opposite was the case.   This would not be in accordance with
justice, or the rules of this court.   " A fact assumed is to be
regarded as proved or admitted."   (*Todd* v. *Nelson*, 109 N.
Y. 316, 324; *Caponigri* v. *Altieri*, 165 N. Y. 255, 263;
*Reeder* v. *Sayre*, 70 N. Y. 180, 190 ; *Drucker* v. *Manhattan
Ry. Co.*, 106 N. Y. 157.)   As was said by Chief Justice NEL-
SON in *Ford* v. *Monroe* (20 Wend. 210), " It would, therefore,
be unreasonable to disturb the verdict upon the ground now
urged, as the counsel did not choose to avail himself of it
when it could have been removed by his adversary by the
production of further proof or met by going to the jury upon
that already given."

The evidence warranted the jury in finding that the fore-
man (Finnegan) had authority, and that it was, his duty to
superintend and direct the work of shifting the engine.   Mr.
Brown, one of the defendants, testified that Finnegan was
foreman of the excavation and hired laborers, but did not hire
or discharge engineers.   He had twenty or twenty-five men
under him, " who were supposed to obey his instructions and
to do what he told them to do."   Right after the accident
Brown came to the engine and found Finnegan and the engi-
neer both there.   He asked Finnegan how it happened, but
made no inquiry of the engineer.   Four witnesses for the
plaintiff swore that Finnegan was the foreman in charge of
the work.   Even the engineer, who was not a swift witness
for the plaintiff, testified that Finnegan was in charge of the
work and gave him his instructions most of the time.   The
engineer simply ran the engine, while Finnegan superintended
the work of making the excavation, signaling the engineer to
operate the engine as the necessities of the work required.

While the engineer ran the engine he never applied power to the derrick without a signal from the foreman, or one of the men under the foreman. The engineer testified that after the engine shifted he asked Finnegan to send him up three or four men; that Finnegan came with the men and directed them what to do; the engineer gave them no directions whatever; he simply attended to his boiler and did nothing so far as shifting the engine was concerned; Finnegan had sole charge of that. He asked Finnegan to lower the boom, but Finnegan did not do it. When asked why he did not insist on having the boom lowered, he answered that he was not supposed to have charge over the foreman. When asked who was the foreman he replied "Finnegan." When asked if Finnegan was his own foreman he said, "certainly." Whether Finnegan was foreman of the engineer was of slight importance, for he took charge and was the only one authorized to take charge of the work of moving the engine when required by the work, or shifting it back into position when misplaced. The engineer had nothing to do with that work, but simply looked after his engine and applied its power to the machinery, when ordered to do so, and not otherwise. Neither the plaintiff nor any of the men engaged in shifting the engine were under the direction of the engineer, but all were under the direction of the foreman. The only man subject to the orders of the engineer was his own helper about the engine. When the engine was to be moved other men not under his charge did the work. If the foreman's authority extended to the plaintiff and the other men engaged in shifting the engine, as it obviously did, the necessity for communicating the rule to him requires no discussion.

The judgment should be affirmed, with costs.

PARKER, Ch J., GRAY, BARTLETT, HAIGHT, MARTIN and WERNER, JJ., concur.

Judgment affirmed.